h JONES, Judge.
We consider, on remand from the Louisiana Supreme Court, the writ application of Erran Evans. We initially denied the Relator’s writ application, finding that the Relator had an adequate remedy on appeal. Originally, this Court did not have a complete factual record before us upon which to give the Relator a complete review of his writ application. However, on remand we have the benefit of additional briefing. Thus, we grant Relator’s writ application, but deny relief.

PROCEDURAL HISTORY

On August 29, 1996 the defendant-relator Erran Evans and Fenesha Blunt were indicted by the Grand Jury for violating La. R.S. 14:30 relative to first degree murder. The defendants have entered not guilty pleas, and various pretrial motion hearings have occurred since that time. On September 1, 1998, the State filed a notice of intent to use other-crime evidence. On the same date, the trial court ruled that the trials of both defendants be severed. The hearing on the other-crimes evidence was continued to October 13, 1998, and on that date the trial court granted the State’s motion in part and denied it in part. Objections for both sides were noted, and the trial court set November 30, 1998 as the return date for any writs. Defense counsel filed a motion to recuse the trial judge[1] and a motion Jjjfor an extension of time to file writs. The court set a new return date of January 15, 1999, which was subsequently extended to February 25, 1999. The defendant filed a timely writ application, but the record does not indicate that the State has applied for writs from the ruling adverse to it.

FACTS

In its motion to admit evidence of other crimes, the State alleged that the defendant Fenesha Blunt entered a convenience store, and the co-defendant, Erran Evans, followed shortly thereafter. Evans shot and killed the store’s owner, Ngh Nguyen, *923 while Blunt robbed the customers in the store. At the motion hearing, Detective Phil Romon of the Jefferson Parish Sheriffs Office related an inculpatory statement made by Blunt after the defendants’ arrests for the murder of Reverend John Thomas. Detective Romon testified that Blunt stated that Evans killed a “Chinese man” in a grocery store in New Orleans a few days before the murder of Rev. Thomas. She also stated that a .380 caliber gun, which was found in her possession at the time of her arrest, was used to kill both the “Chinese man” and Rev. Thomas. According to Det. Romon, Blunt stated that she and Evans coaxed the owner to unlock the door to the convenience store by wearing a police jacket. While Blunt looked around the store, Evans killed the owner, Mr. Nguyen.
Detective Romon also testified to the gist of Blunt’s statement regarding the murder of Rev. Thomas, which occurred on December 1, 1994. According to Blunt, Det. Romon testified that she and Evans were walking down Airline Hwy when Rev. Thomas approached her and asked if she was a “working girl”. She and Evans got in Rev. Thomas’s car and |3negotiated a price for sex. Blunt performed oral sex on Rev. Thomas, and when Rev. Thomas exited his car to fasten his pants, Evans approached Rev. Thomas from the rear and shot him one time in the back, killing him. Blunt and Evans then took Rev. Thomas’s Cadillac and fled the scene. Evans and Blunt were later arrested when police officers found them in possession of the victim’s vehicle. Blunt was also in possession of the .380 caliber weapon that was used to kill Rev. Thomas.
On October 13, 1998, Detective Norman Pierce testified that he investigated the murder of Mr. Nguyen, which occurred on November 27, 1994. According to Det. Pierce, the witnesses stated that the victim had locked the store while a second-line parade passed in front of the store. When the parade was over, the victim unlocked the door, and Blunt came in. She went to the back of the store where the witnesses were buying food. She told them that it was a robbery and began taking jewelry and other items from the witnesses. At the same time, Evans, who had followed Blunt into the store, was located in front of the store with Mr. Nguyen. Evans shot Mr. Nguyen and took a .9 mm handgun from the victim’s waistband. Evans then went behind the counter and took over $9,000 in cash along with other additional items. When Blunt came from the back of the store, both defendants left. During the subsequent investigation, various witnesses identified the defendant Evans in a photographic line-up.
The other crimes the State sought to introduce against the defendants involved robberies and an attempted murder allegedly committed by the defendants at the London Lodge on Airline Highway in New Orleans. In one incident, the victim was robbed after engaging in sex with a prostitute whom he later identified as the defendant Blunt. The trial court denied the 14State’s motion as to these other crimes. The trial court, however, granted the motion to include the robbery and shooting of Rev. Thomas. The trial court also limited the other-crimes evidence by restricting the State from stating in its case in chief that Rev. Thomas was killed and that Evans had been convicted in Jefferson Parish.[2]

DISCUSSION

Louisiana Code of Evidence Article 404 B permits the use of other crimes evidence in certain circumstances for purposes other than to prove the character of the person. These purposes may include proof of motive, opportunity, intent, preparation, *924 plan, knowledge, identity, absence of mistake or accident. La. C.E. art. 404(B)(1) provides as follows:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparations, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
In State v. Prieur, 277 So.2d 126 (La. 1973), the Supreme Court ruled that there must be clear and convincing evidence that the defendant committed the other crime before such evidence could be admissible. However, the Legislature subsequently enacted La. C.E. art. 1104 and repealed Article 1103, changing the State’s burden of proof at the Prieur hearing to only a preponderance of the evidence standard as is required in Federal courts. State v. Crawford, 95-1352 (La.App. 3rd Cir.4/3/96), 672 So.2d 197, writ denied 96-1126 (La.10/4/96), 679 So.2d 1379. In the case sub judice, the relator has |Balread.y been convicted of the murder of Rev. Thomas, and therefore the level of proof does not appear to be an issue.
In State v. Johnson, 97-1701, p. 5-6 (La.App. 4 Cir. 5/27/98), 716 So.2d 403, 406, this Court stated:
In State v. Moore, 534 So.2d 1275, 1278 (La.App. 4 Cir.1988) writ denied, 560 So.2d 21 (La.1990), this Court reviewed the requirements for other crimes evidence:
Because of the substantial risk of grave prejudice from evidence concerning unrelated acts of misconduct, courts generally disallow testimony concerning other crimes committed by a defendant. State v. Prieur, 277 So.2d 126, 128 (La.1973). The rationale for the Prieur rule is that the State must prove beyond a reasonable doubt that the accused committed the crime with which he stands charged in order to establish guilt. State v. Ledet, 345 So.2d 474, 477 (La.1977). Evidence that the defendant may have committed the charged offense simply because he is a bad man who committed other crimes on other occasions is not sufficient to establish guilt. Id. Certain exceptions to the Prieur rule have been developed, both by statute and by jurisprudence. Under LSA-R.S. 15:445 and 446 [now C.E. art. 404], evidence of acts similar to the charged offense is admissible to show intent, knowledge or system. Additionally, the Louisiana Supreme Court has allowed evidence of other crimes exhibiting almost the identical modus operandi or system, committed in close proximity in time and place. State v. Ballard, 351 So.2d 484 (La. 1977).
Furthermore, to be admissible, the modus operandi in both the charged offense and the uncharged offense must be so peculiarly distinctive that one must logically believe that they are the work of the same person. Moreover, the use of the other crimes evidence must be substantially relevant for a purpose other than to show that the defendant has the propensity to commit crimes. Rather, it must tend to prove a material fact genuinely at issue. Lastly, the probative value of such evidence must outweigh its prejudicial effect. Id. (citations omitted.)
In its motion to use the other crimes evidence, the State averred that the actions of Blunt and Evans, in which Blunt made initial contact with the victims and then Evans proceeded to rob and shoot them, showed a system or | fipattern by the defendants. The State further averred that the use of the same weapons also evidenced a system and “is relevant to identity, preparation and plan.”
*925 In State v. Phillips, 92-1063 (La.App. 4 Cir. 2/29/96), 670 So.2d 588, writ denied 96-2131 (La.9/5/97), 699 So.2d 85, the defendant was charged with the armed robbery of a convenience store cashier. The cashier had been robbed the previous night as well, but the defendant was on trial for the second incident only. Nevertheless, evidence of the first robbery was admitted. This Court found that the “other crimes” evidence was properly admitted because, during the second robbery, the perpetrator made a specific reference to having robbed the victim on the previous night. Notably, the defendant had an alibi for the first robbery but not for the second. This Court concluded that the evidence of the earlier robbery was highly probative of identity because of the statement made during the second robbery.
In contrast, in State v. Reddick, 94-2230 (La.App. 4th Cir.2/2/9/96), 670 So.2d 551, lurit denied 96-0799 (La.9/13/96), 679 So.2d 103, this Court found reversible error in the admission of other crimes evidence. The defendant in Reddick was convicted of first-degree murder, and identity of the killer was the key issue. At trial, the court admitted evidence that four days before the murder, the defendant robbed a man at gunpoint in the parking lot of the bar where the victim was last seen. The defendant had also been present at the bar, and a witness stated that he saw the defendant leave the bar -with the victim. The earlier robbery occurred during a drug transaction. This court also allowed evidence of an earlier domestic altercation whereby the defendant waved a gun in his girlfriend’s uncle’s face. The trial court had admitted this “other crimes” evidence to show |7intent, not identity. This Court disagreed, stating that the intent to kill the murder victim was not an issue because he was killed by a gunshot fired directly into his head. This Court found that the other incidents would be probative of identity, but were not so distinctive as to justify them admission into evidence. State v. Reddick, p. 9, 670 So.2d at 555.
The record does not indicate what defense, if any, Evans intends to present. However, identity does not appear to be a major issue in this case in light of the witnesses’ identification of Evans following the shooting. Further, there is no evidence that Evans intends to present an alibi defense. Nevertheless, the use of the same weapon to shoot both victims appears sufficient to permit introduction of the other crime evidence.
Similarly, in State v. Johnson, 97-1701, p. 5-6 (La.App. 4 Cir. 5/27/98), 716 So.2d 403, 406 this Court affirmed in a pretrial ruling that evidence of a rape could be presented in a first degree murder trial involving the murder of a woman who was known as “Little Heart”. This Court noted that the facts of the two cases were not particularly close. However, the victim of the rape stated that the defendant had asked her if she knew “Little Heart” and told her that he had killed “Little Heart.” The defendant also threatened to do the same to her. The defendant’s statement to the rape victim was found to be sufficient to bind the two crimes together and was highly probative of identity. Johnson, p. 13, 716 So.2d at 409-10.
Considering that both defendants were involved in the murder of Rev. Thomas and used the same weapon to commit the crime, we find that the trial court did not err in ruling that the two cases had sufficient similarity to permit the introduction of other-crimes evidence to show identity and a system.
|sThe Relator further argues that the other-crimes evidence to be introduced in the instant trial was found to have been inadmissible by our brethren in State v. Evans, 712 So.2d 941, 944 (La.App. 5 Cir. 1998). We disagree.
While we agree it was error to permit the state to introduce evidence of the Relator’s involvement in the attempted murder of Larry Cartwright, this trial judge has specifically excluded that evidence from the Relator’s upcoming trial. Further, *926 when the Rev. Thomas murder was tried, the murder of Mr. Nguyen had not been brought to trial. Thus, the other-crimes evidence was not clear and convincing in the murder trial of Rev. Thomas. Because the jury has convicted relator for the murder of Rev. Thomas, and that conviction has become final, we find that the trial court in the case sub judice did not error in allowing the introduction of other-crimes evidence in the Nguyen murder trial.
Finally, The Relator argues that the other-crimes evidence is so prejudicial that such evidence should be excluded. This argument is meritless considering that the trial court has specifically ruled that the State may not introduce into evidence the fact that Rev. Thomas was killed and that the Relator was convicted in that case. Clearly, the trial court has evaluated the probative value of such evidence, and has attempted to minimize the prejudicial effect. Thus, we find no merit to this argument.
Accordingly, we granted The Relator’s writ application, but deny relief.
WRIT APPLICATION GRANTED; RELIEF DENIED.

. The Honorable Greg HangarLner, Judge Ad Hoc, made the rulings on the motion on October 28, 1998. The motion to recuse pertains to the new trial judge, the Honorable Camille Buras, which is not an issue here. However, a check of the updated docket master shows that the court denied the motion to recuse on January 27, 1999, and the defense gave notice of intent to seek writs.

. During the hearings, it was disclosed that Evans' conviction in the Thomas murder was on appeal. The appellate court affirmed the conviction. See State v. Evans, 97-1030 (La. App. 5th Cir. 4/15/98), 712 So.2d 941, Writ not considered, 98-2088 (La. 12/18/98, 731 So.2d 276.